The next case, number 21-1956, United States v. Alan Giovanni Cordero-Velazquez. At this time, would Counsel for the Appellant please introduce herself on the record to begin. Good morning, Your Honors, Judge Thompson, Judge Farron, and Judge Montecarlo. May you please be seated. My name is Maria Soledad Ramirez-Peseca, and I'm here today on behalf of the Appellant, Alan Cordero-Velazquez. In this particular case, Your Honors, we are questioning the District Court firing sentence imposed to Mr. Cordero-Velazquez after he pleaded guilty, straight guilty, a guilty plea, a guilty hearing for possession, simple possession of a firearm manipulated to be converted in a machine gun. The penalty imposed by the District Court was a 48-month penalty, sentencing penalty, which represented an 11 to 18 punishment higher than the guideline sentence recommended for that particular offense. The guideline sentence was from a 31 to 37 months, which took into account in Mr. Cordero-Velazquez's case the fact that he accepted that the firearm was stolen and also the fact that he was a prohibited person because he was a marijuana user. Both parties agreed as to a more lenient sentence at the sentencing hearing. Mr. Cordero-Velazquez requested a probation sentence due to the fact that he presented evidence of a psychologist that treated him for sentencing purposes and showed that he was suffering from a certain depression and anxiety and that he had some cognitive problems. His IQ was between the low to average level. He requested that, considering his mental issues that were not treated, and for that reason he self-mutilated and used marijuana, that he was sentenced to probation instead of incarceration. One of the arguments you make is that there's a difference in sentencing between your client and a co-defendant. That's correct, Your Honor. And I was just wondering if you could address, it appears that the co-defendant was subject to a lower guideline sentencing range, and I just wonder how you suggest we differentiate between the two if we know that there is that difference. Mr. Casillas, who was the other defendant in the case, was driving the car. He was the one who possessed the machine gun. When the police officers arrived and asked him for the driver's license, they looked at his funny pad and they found out that he was carrying the machine gun. Basically, they were both in the same circumstances. The only difference that the judge found out about sentencing was that Mr. Cordero was a marijuana user and also had mental disabilities, had a mental problem. That factor was opposed or objected by the District Court counsel for Cordero Velazquez as sentencing because particularly he brought the mental issue as a mitigating factor, not as aggravating factor for the offense. On that point, I was having trouble piecing all together what happened, but is it possible – will you just tell me if this isn't what happened? There's a separate offense if you're a transferee of a weapon and you're either an unlawful drug user or have been adjudicated as having a civil commitment because of mental illness problems, correct? I don't understand the question very much, Your Honor. There's a separate criminal provision which makes it an offense to be a transferee of a firearm if you are an unlawful drug user or have been adjudicated mentally in need of civil commitment, correct? I have to admit that I'm not aware of that provision. So that wasn't in play when they're talking about the significance of him being an unlawful drug user or having this. I thought the government was making reference to that as if it was uncharged conduct, but maybe I'm misunderstanding what's happening. No, Your Honor. As far as I'm concerned, I understand that was not brought up at sentencing nor in part of the process at the District Court level. In referencing substance abuse and mental health, what was your understanding of what the District Court was saying there? The District Court concluded that basically because he was an occasional user of marijuana and had problems in terms of his anxiety and depression, he took it as an aggravating factor instead of taking it as a mitigating factor, and that was brought up by the District Court counsel for Verde Velazquez. Also, on the other hand, the government recommended a sentence of 33 months of imprisonment, much lower than the one that was imposed. After timely objecting to the District Court's sentence for being unreasonable, in terms of procedural reasonableness and substantive reasonableness, the Court denied the objection. In that sense, Mr. Cordero Velazquez insists that there was a procedural and substantive reasonableness in the way the District Judge sentenced him. There was no additional factor that could be added or that the Court really considered, aside from the fact that there is a gun violence problem in Puerto Rico and also the fact that he disagreed with the sentencing guidance applicable to the offense. Mr. Cordero Velazquez's counsel, at the sentencing hearing, submitted that there were no additional factors to support that sentence. The fact that the District Judge did not agree with the sentencing guidance without any other additional fact does not support the invariant sentence. The same happens with the community problem in Puerto Rico, the gun violence problem. The fact that the District Judge considered the problem doesn't necessarily justify the sentence because he didn't consider any other particular factor in the case that justified that variance. Mr. Cordero Velazquez didn't have any prior. He admitted using the firearm before, but on New Year's Eve, there is no connection with him dealing with a firearm offense before or using the firearm for criminal activities. There was no evidence, as opposed to other precedents by this Court of Appeals, that demonstrated that he was dealing with firearms before. When he says, this is the Court at the sentencing, Mr. Cordero is a drug user and a mental health patient, which Mr. Casillas is not. Okay, as I am. Then the Court says that's why his base offense level started at 20 and not 18. Can you explain that, please? Why is the fact that he's a drug user and a mental health patient up in the base offense level? Because when there's a prohibited person, then two points are added to the offense. He's a prohibited person because of both of those facts? No. The way the presentence report presented it, it's because he was a drug, marijuana user, not because of the mental issue. The mental issue came up later. Would that also make him a prohibited person? The mental issue? Yes. I believe yes. Okay, so the District Court there, in saying drug user and mental health patient, is explaining why the base offense level is two points higher than the 18. That's correct. And Mr. Casillas had an 18 because he was neither of those things. That's correct. But even considering those two points, it was beyond the sentence in Kaila Ridge, which was from 31 to 37 months, and he was sentenced to 48 months. So are you making a substantive unreasonable argument? Is that what you're doing here? We are making a procedural and a substantive argument. Yes, Your Honor. What's the procedural there? The procedural is that the court never presented facts with which to support the violence, aside from the community factors that didn't apply directly to him, because the court didn't state, okay, because of the way this guy is going to increase the problem of violence in Puerto Rico. But he said specifically that the factors he's got, they shared it with each other. Yes, they shared it, and he admitted as to the ownership. They shared the ownership. The fact that he's sharing a gun with another person, he says, adds to the concern about gun violence, because it's not just one person has it. This is somebody who's sharing it with other people. That's going to increase the likelihood that the gun is going to be used, and that makes him more concerning than the average defendant who just possesses it. Well, that was not the court reasoning, as I understand. I believe that the court just concluded that there was a gun violence problem in Puerto Rico, but in general terms, the court didn't state that this person, because he was sharing the gun with another one, makes the gun violence problems worse. There is no problem of recidivism in this case. There is no prior. There is no violence in this case. There are no agents in this case, as opposed to this court of appeals precedent that when affirming those violent sentences, there's always an additional factor. But in this particular case, it's just a mere possession. This is what the district court says. Both Mr. Cordero and his co-defendant claimed ownership of the pistol, which they illegally shared with each other, adding to the already pervasive problem of illegal possession of machine guns in Puerto Rico. Isn't that the direct tie between the sharing and the problem? Yes, yes. Me personally, as Mr. Cordero says, he doesn't take it as an aggravating gun violence situation in Puerto Rico. He didn't particularly refer to any other factor that could make the situation worse, aside from the fact that there's a gun problem in Puerto Rico, but this is a mere firearm possession case with no other aggravating factor. He doesn't have any prior, no recidivism. So how did he, that's our position, sustain the barrier imposed? We respectfully submit that it's unreasonable, that there is no factual support for it, and that it's also substantively unreasonable. For this reason, we request that the sentence be reversed and remanded for resentencing.  Thank you, counsel. At this time, would counsel for the government please introduce herself on the record to begin? Good morning. Katherine Allen, with Office of the United States. May it please the court. The district court here conducted an individualized assessment of the offender and offense characteristics in this case, relying on the fact that Mr. Cordero fired the machine gun, that it was a modified machine gun, which makes it especially dangerous, that the gun was loaded, and he had an additional high-capacity magazine that was loaded, that he had the machine gun out in a car and was sharing it with his co-defendant, which added to the pervasive problem of gun violence in Puerto Rico, and he was connected to that gun violence in other ways as well. His firing of the gun was in the Loaiza area. He admitted at length to his involvement in the gang violence in that area and in selling drugs, so we think that he is connected and the district court was permitted to rely on that factor. In addition, he had violated his bail conditions a number of times, and as the guidelines noted, he also was a prohibited person and that the weapon was stolen. What should we make of the difference in sentencing between the defendant and his co-defendant? I think the defendant argues that his co-defendant is more culpable because it was his gun and he was in possession of it, and yet he received a lower sentence. Well, Your Honor, first of all, we don't think it's an apples-to-apples comparison because they had different guidelines ranges. His co-defendant's range was 24 to 30 months. His co-defendant was sentenced to 36 months. Here, the range was 31 to 37 months, and he was sentenced to 48 months. Is that solely because of the unlawful drug user and mental patient? The difference in the guidelines range? Yes. It's because the base offense level is different because the co-defendant was not a prohibited person. And neither, you know, with respect to the unlawful drug user, that was in the PSR, not Objection 2, correct? That's correct. And what about the prohibited person on the ground being a mental patient? That was also in the PSR and was not Objection 2. What did the PSR say in that regard? What's the test for that part of being a prohibited person? I thought you had to be adjudicated. That's correct, Your Honor. Would the PSR say he was adjudicated? The PSR does not say that he was adjudicated. So what's the basis for the district court's conclusion that he's a mental patient and that distinguishes them? Well, Your Honor, the PSR does state that he, in calculating the base offense level, and this is at page 7 of the confidential appendix, the PSR states that— Be careful with that seal, but you're talking about— Yes, I was just going to read from the— Sorry, but at that page, the PSR states that he is a drug user and a mental health patient, and so the base offense level is 20, and that was Objection 2. But you are correct that the guideline provision in this issue does require adjudication. But again, there are two reasons that he's a prohibited person. So there are two reasons he's a prohibited person that the PSR stated, and neither of those was objected to. So again, we don't think that that's an apples-to-apples comparison. In addition, the district court did rely on Kimbrough to disagree with the sentencing guidelines on two grounds, the fact that the dangerousness of modified machine guns and the possession of ammunition in high-capacity magazines, and the increased dangerousness that that suggests. And I just wanted to quickly make a couple of points on the machine gun issue. First is just to clarify that the sentencing commission didn't have a forum and didn't make any amendments between 2018 and 2023, and the problem of modified handguns with these 3D-printed switches is something that's very, very recent. In a 20HA letter in another case this week, we submitted that there was a 570% increase comparing the years of 2012 through 2016, and 2017 to 2021. Mr. Cordero was sentenced in 2022. So I just want to make the point that the sentencing commission hasn't considered this issue prior to his sentencing, after it became a reform. What's the issue it hasn't considered? The modified machine guns. It didn't consider any modified machine guns until 2018? Sorry, if I wasn't clear, the increased dangerousness of modified machine guns. The increased dangerousness or the increased prevalence of using modified ones? Sorry, to back up, the guideline and issue that applies to machine guns is from 1991. It hasn't been modified since then. It relies on the definition in the statute. But the core reason for it not being modified starts in 2018. Yes, Your Honor, sorry. The point I was trying to make was just that the commission has not had a chance to consider this increased dangerousness. When you say increased dangerousness, does that mean they have not had a chance to consider how dangerous a modified weapon is compared to an unmodified one, or they have not had a chance to consider how many more times the unmodified one is being used? I guess both, Your Honor. Both? Is there some reason to think that they have not considered how dangerous a modified gun would be? Yes, Your Honor, I was just trying to make... No, I'm just asking about what is the basis for thinking they had not previously considered the potential danger of a modified machine gun? Of this type of a modified machine gun, a modified handgun. Yeah. That problem didn't arise until recently. But when you say the problem didn't arise... Of a modified handgun... There were not such things as... Correct. There were not such... He doesn't mention 3D printing. Oh, sorry. That's just one of the reasons that it has become... More prevalent. More prevalent, exactly. But the thing he's focused on is how dangerous a modified pistol is. Yes, Your Honor. But that's something the Commission would have been unaware of before 2018? This type of modification. What's this type? A modification to a handgun. They would have been unaware of that before 2018? Because this handgun... But I thought the actual definition of firearm in the statute that makes it a crime contemplates modified pistols. It contemplates modified firearms, and that dates back to 1986. My point was just that these definitions are old, and the problem of modified handguns is new. But you just keep eliding me when I'm trying to fix it. I'm sorry. I'm not understanding that. The definition says modified firearm. So why are you to believe that when the definition specifically says modified firearm that the Commission wasn't aware of what you are saying is a more recent version of them? Because the more recent version of them didn't exist when the Commission adopted that definition. Is there anything to indicate that the District Court's statement about the danger of a modified pistol did not exist prior to 2018? The point I was trying to make is that there's no indication the Commission would have considered it because it wasn't a prevalent problem. The type of weapon that is very prevalent today that the District Court was referring to in this case and in other cases that is prevalent today, and that is more dangerous because of the difficulty of controlling it, that that problem... But see, the thing I'm having trouble with is you're saying because it happens more now, we know the Commission would consider it today if they were thinking about it because it's so pervasive. Then you're saying, but we don't know that they would have thought about it back then because it wasn't as pervasive, right? Yes, Your Honor. We know that they were contemplating when it talks about modified... Converted weapons. Converted weapons. Doesn't it actually describe some that are handguns? No, Your Honor. I thought it had a specific exception for a certain type of revolver. Is that wrong? The statute says, The terms should also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or a combination of parts designed and intended for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled, if such parts are in the possession. Because he separately says that the machine gun guideline, the same judge, one of his reasons for disregarding the guideline is that he says it applies even to the snug nose revolver. So, that suggests to me that they were imagining smaller guns being modified also. Oh, well the National Firearms Act talks about, it specifically talks about rifles and shotguns that have been made shorter, and that's in 5845. But not handguns. And I think, if anything, that further supports our point that both the statute and the commission wouldn't have had this in mind when they adopted this definition. And, yeah, so I just wanted to point that out about the timing. And the letter that DOJ submitted in February of 2023 was addressing a different issue, but did note the increased dangerousness of these types of modified guns. If there are no further questions. Just one last thing. There's just a, there's a confusion, I think, in what it means to be saying he's invoking, the judge has invoked the authority of the Kimbrough. At least, maybe I'm the one who's confused. In some instances, what's meant is the guideline considered everything that I'm considering. Notwithstanding that it did all that, it weighed the assessment incorrectly. So, for policy reasons, I reject the range of sentence that it suggests. To me, that's what happened in Kimbrough. Not a confusion as to whether the commission thought about the difference between crack voting. Plainly did, although Congress forced it to take the view. So, the commission had no choice, maybe. But, nonetheless, the court says, in that instance, the district court's free to say, yes, but I just think the range is crazy, given what the nature of this offense conduct is. A separate idea, which is sometimes being used here, as if it's a Kimbrough complaint, is that I'm not going to follow the guideline because the commission didn't consider some feature. And when I consider that feature, a case that has that feature justifies a variance, or justifies something else. That's almost just an argument for a variance, based on a case-specific factor, because it's not a mind-run case. Your Honor, I think what the district court did here is slightly different than what you just described. So first, the district court says that the guidelines treat both types of machine guns the same. Then the district court says modified machine guns are more dangerous. The guidelines don't account for this. I think by this, what it's saying is the guidelines don't account for the increased dangerousness, in that they don't assign a higher level. That's almost just an argument for a variance, in the sense that that's what we say every time a judge varies in the improvement. You've identified some factor that makes it really special that's not mind-run, and therefore you can vary from the guideline, even though the guideline applies, which is different than Kimbrough, which is the guideline is considering this exact case. They thought about it. They chose the range for it. But I'm telling you that range is wrong, even for that case. Well, I think, Your Honor, what the district court is saying here is that it disagrees with the policy of treating modified and non-modified machine guns the same. It disagrees with the policy of treating modified and manufactured machine guns the same. But what I'm saying is, take an example. The guideline applies machine guns. Possession of a machine gun, 20 to 26 months. In the particular case, the person had the machine gun at a kindergarten. We could vary, right? It's a pretty unusual offense by them. But you wouldn't say that's Kimbrough because the guideline applies, but they didn't take account of being in a kindergarten, so I object to the guideline. You just say that's a case-specific reason that makes it not mind-run, so I'm varying. How is that any different from what he's doing here? It doesn't make it wrong. It may be perfectly legitimate. But I'm saying it's not really a classic Kimbrough point. That seems just like a case-specific factor that takes it out of the mind-run. Your Honor, I think if you view this as an instance of where it is a case-specific factor and that that's a reason to vary, I think that's fine. In Kimbrough, the Supreme Court said that a court can vary even in the mind-run. That's right, and what I'm saying here is if that's the authority that's being invoked, we have to decide then, is this a mind-run case? But he's kind of arguing it's not a mind-run case, as are you, because you're saying they wouldn't have even thought about this case, and it was so unusual. That makes it more like a variance than a Kimbrough. Maybe this is metaphysical. It doesn't matter. But to me, it matters a little bit for how we do the analysis. Well, I think, Your Honor, what the Supreme Court has made clear is that the district court needs to consider the 3553A factors and how they apply to the offense and offender characteristics and go through all those factors. And a district court is permitted to disagree with the guidelines range, both for individual and for categorical reasons, so long as the district court is basing its disagreement on the statutory factors. Right, but what I'm trying to say is if the district court says the reason I disagree with the guidelines is because this is not a mind-run case, we can only approve that if we agree it's not a mind-run case. If the district court says I disagree because this is not a mind-run case, and that makes it subject to a variance, then we analyze, oh, okay, is that a good enough variance, and are you right it's not a mind-run case? Do you see what I'm saying? I do see what you're saying, Your Honor. I think the way that the district court invoked Kimbrough was to say that it had a policy disagreement. Kimbrough is about policy disagreements. I think the district court here said I'm invoking Kimbrough. I have a policy disagreement because the guidelines encompass both manufactured and modified machine guns and don't assign any increased weight to the increased dangerousness of modified machine guns. I disagree with having a blanket policy. I think they should be treated differently. Even on that score, how would you know when they should go up? Because it's more dangerous, and therefore— So how do you know if we didn't already start high enough? That's what Kimbrough allows a district court to do. But he hasn't made an argument that we know it's already too low. All he's saying is this is different than that, but if it's all anchored already too high, then that's not an independent reason for bearing upward from the guideline. You'd have to have a reason why this guideline is already too low. Just saying it includes something that's more dangerous than something else doesn't tell me whether it's already too low or too high. Well, Your Honor, I think the district court has the discretion to look at the need for deterrence, the need for respect to the law, the need to protect the public. And what the court here was saying was that the increased dangerousness of a modified machine gun with a shooter who's not trained, who has a high-capacity magazine, who has it out with him in public, that all of those facts show— That the guideline's too low without offense? All of those are reasons to bear upward in this case. And I also just want to point out that the defendant here didn't object to the district court's invocation of Kimbrough at the district court, and even in its opening brief didn't argue that it was improper to rely on Kimbrough. So we think the court doesn't even really need to get into any of these issues because they aren't preserved. But again, we think that what the district court here did was entirely proper, whether you conceive of it as individualized or as a policy disagreement. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.